CLERK'S OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED
for Roanoke
DEC - 1 2008
JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| CHARLES MOODY, | ) | Civil Action No. 7:08-cv-00432 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | |
| DANIEL DEJESUS, et al., | ) | By: Hon. Jackson L. Kiser |
| Defendants. | ) | Senior United States District Judge |

Plaintiff Charles Moody, a federal inmate proceeding pro se, filed this Federal Tort Claims Act[1] and Bivens[2] civil action, with jurisdiction vested in 28 U.S.C. § 1331, against the Federal Bureau of Prisons and prison medical personnel Daniel DeJesus, David Allred, David Roff, Irwin Fish, and Judy Pham (medical personnel). Based on the record, I dismiss Moody's Bivens claim, terminate the Federal Bureau of Prisons as a defendant to Moody's remaining Federal Tort Claims Act claim, and deny Moody's request for injunctive relief.

I.

Moody alleges that the defendants at various times dismissed Moody's medical concerns, improperly diagnosed his conditions, and took too long to properly treat his conditions over a four-year period while he was an inmate at the United States Penitentiary in Lee County, Virginia.[3] (Pl. Mem. at 5, 6-13.) Moody specifically claims that the "heart of the malpractice denial[] is [that] plaintiff continued to ask these medical professional[s] to help him . . . . He could not on occasions - [sic] breathe properly, and even then defendants claimed plaintiff's

---

[1] 28 U.S.C. §§ 2671-2680.

[2] Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971).

[3] Moody is presently incarcerated at the Federal Correctional Institution - Gilmer in Glenville, West Virginia.

illness was a made up story . . . and even had plaintiff visit the mental health department for his physical complaints to the these defendants. But to learn [sic] later on that Moody . . . did have the medical problem he complained about to . . . defendants." Id. at 5.

On February 6, 2004, Moody sought and received medical care from Pham for stomach discomfort, and he received a medication. On March 2, 2004, Moody sought and received medical assistance from DeJesus for neck pain and shortness of breath. DeJesus gave Moody pain killers and assured him his heart was healthy, but Moody alleges that DeJesus should have identified him with asthma at that time. On March 5, 2004, Moody sought and received medical care from Pham for food coming up his throat, and Pham gave him medication. On March 24, 2004, Moody sought and received a physical exam. On April 5, 2004, Moody sought and received more medical assistance from DeJesus for his previous complaints, and DeJesus gave him a prescription medication for his stomach. On April 26, 2004, Moody sought and received medical care from DeJesus, the results from his previous stomach exam, and three more various prescription medications to treat his stomach condition. On March 5, 2004, Moody sought and received medical care from Pham for his stomach condition and lungs, and he received more medications and a chest exam. On July 19, 2004, Moody sought and received medical care from DeJesus for foot pain. At two o'clock in the morning on October 17, 2004, Moody sought and received a medical exam for dizziness and shortness of breath. DeJesus examined Moody again the next day and did not find anything abnormal with him. On Febraury 13, 2006, Moody sought medical care for all of his conditions from Fish, who referred Moody to the psychological department for evaluation the next day. On March 7, 2006, Fish collected blood and urine samples for testing and gave Moody more medication, and Moody alleges that Fish would not

2

examine him at that time. Moody further alleges that the Federal Bureau of Prisons, Allred, and Roff did not properly train and supervise Fish; Allred and Roff improperly denied Moody medications and proper medical care; and Fish, Allred, and Roff do not have a license to practice medicine in the Commonwealth of Virginia.

Moody asserts the same facts and allegations for his Federal Tort Claims Act (FTCA) claim for medical malpractice against the same defendants, arguing that he suffered pain and mental anguish as a result of the defendants' alleged acts and omissions. Moody seeks declaratory relief that the defendants violated his constitutional rights and a temporary injunction to prevent retaliation against him. Moody also seeks court costs, attorney fees, investigation fees, and $30 million in damages as follows: $10 million of "respective damages" for any harassment, transfers, loss of good time, or retaliation; $10 million of compensatory damages; and $10 million of punitive damages.

II.

I am required to dismiss any action or claim filed by an inmate if I determine the action or claim is frivolous or fails to state a claim on which relief may be granted. 28 U.S.C. § 1915(e)(2); see 28 U.S.C. § 1915A(b)(1). The first standard includes claims based upon "an indisputably meritless legal theory," or claims where the "factual contentions are clearly baseless." Neitzke v. Williams, 490 U.S. 319, 327 (1989). The second standard is the familiar standard for a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). A complaint needs "a short and plain statement of the claim showing that the pleader is entitled to relief[,]" and sufficient "[f]actual allegations . . . to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1964, 1965 (2007) (internal quotation marks omitted).

3

Although I liberally construe pro se complaints, Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978), I do not act as the inmate's advocate, sua sponte developing statutory and constitutional claims the inmate failed to clearly raise on the face of his complaint. See Brock v. Carroll, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring); Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985).

A. Bivens claim

In Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, the Supreme Court held that damage suits could be maintained against federal officials for violations of the United States Constitution. 403 U.S. at 392; see Carlson v. Green, 446 U.S. 14, 24-25 (1980) (applying Bivens to constitutional claims against federal prison officials). Federal civil rights actions under Bivens, like civil rights actions against state officials under 42 U.S.C. § 1983, are governed by the statute of limitations for personal injuries in the state where the tort allegedly occurred. See Owens v. Okure, 488 U.S. 235, 239-40 (1989). Bivens actions arising from a personal injury sustained within the Commonwealth of Virginia fall under Virginia's two-year statute of limitations for personal injury.[4] Va. Code § 8.01-243(A). Based on the record, I assume Moody delivered the complaint to prison officials on July 15, 2008, for mailing the

---

[4] I must also apply state equitable tolling rules when proceeding under a state's statute of limitations. Wade v. Danek Med., Inc., 182 F.3d 281, 289 (4th Cir. 1999). Under Virginia law, the "continuing treatment rule" tolls the two-year statute of limitations in certain malpractice actions. Va. Code § 8.01-243(C). Under this rule, the statute of limitation begins to run at the termination of a substantially uninterrupted course of improper examination or treatment by the same physician for the same or related illness or injury, not at the time of an initial act of malpractice. See Robb v. United States, 80 F.3d 884, 894-95 (4th Cir. 1996). However, a Bivens claim is not a malpractice claim because an allegation of malpractice does not state a cognizable constitutional violation. Estelle v. Gamble, 429 U.S. 97, 105-06 (1976). Therefore, the equitable tolling rules do not apply to Moody's Bivens claim.

complaint to the court.[5] Therefore, I may only consider claims that accrued within the two years prior to Moody filing his complaint on July 15, 2008.

Although state law determines the statute of limitations, federal law determines when the cause of action accrued. Nasim v. Warden, Md. House of Corr., 64 F.3d 951, 955 (4th Cir. 1995) (en banc). A Bivens claim accrues when "either when the plaintiff has [actual] knowledge of his claim or when he [has constructive knowledge of his claim] – e.g., by the knowledge of the fact of injury and who caused it – to make reasonable inquiry and that inquiry would reveal the existence of a colorable claim." Id.; see Wallace v. Kato, 127 S. Ct. 1091, 1095 (2007); Farmer, 511 U.S. at 839-40.

Moody alleges in his complaint that he told the defendants throughout 2004 that he was experiencing breathing difficulties; dizziness; and neck, stomach, foot and arm pain, but he was repeatedly unsatisfied with the care the defendants provided during this time. (Pl. Mem. at 6-9.) Moody also contends that he was finally properly diagnosed in May 2006 with an enlarged prostate and asthma. (Pl. Mem. at 9.) Moody would certainly have been on inquiry notice at some point between 2004 and 2006 since he alleges that he experienced complete dissatisfaction with the defendants' medical care throughout that time to the degree it constituted cruel and unusual punishment. Furthermore, Moody had actual notice of his claim by the May 2006

---

[5] As an inmate proceeding pro se, Moody is entitled to the benefit of the prison mailbox rule, which provides that a complaint is deemed to be filed when the inmate gives it to prison officials for mailing. See Lewis v. Richmond City Police Dep't, 947 F.2d 733 (4th Cir. 1991) (applying the prison mailbox rule in a section 1983 action); Farmer v. Brennan, 511 U.S. 825, 839-840 (1994) (holding Bivens claim is analogous to a § 1983 claim and case law involving § 1983 claims is generally applicable in Bivens actions and vice versa). Plaintiff has not presented an affidavit indicating when he gave his complaint to prison officials for mailing. However, I can assume that he did so on July 15 or July 16, 2008, based on his handwritten cover letter stating July 15, 2008, the United States Postal Service date stamp on the complaint's envelope stating July 16, 2008, and the court stamp indicating that the Roanoke, Virginia, clerk's office received the complaint on July 21, 2008 via Priority Mail from Glenville, West Virginia. Moreover, the exact date in mid-July is not determinative due to the action's accrual date.

prostate and asthma diagnosis, as evidenced by his administrative complaint in June 2006, in which he raised the same complaints as he does in his Bivens claim. (Pl. Attach. #3 Grievances, 4-6; Compl. Ex. B.) Therefore, Moody had notice of his claims against the defendants before July 2006, two years before he filed this Bivens claim, and thus, his Bivens claim is time barred by the statute of limitations. When a court determines that the statute of limitations unquestionably provides an affirmative defense, the court may summarily dismiss the complaint as failing to state a claim upon which relief may be granted, pursuant to 28 U.S.C. § 1915A(b)(1). See Todd v. Baskerville, 712 F.2d 70 (4th Cir. 1983) (holding a court may dismiss a claim based on affirmative defense under predecessor statute). Accordingly, I dismiss Moody's Bivens claim, pursuant to 28 U.S.C. § 1915A(b)(1), for failing to state a claim upon which relief may be granted.

Even if the statute of limitations did not bar Moody's Bivens claims, Moody did not show that his medical treatments violated his constitutional rights. A Bivens claim must allege three elements: (1) the defendants are federal agents, (2) the defendants acted under the color of their authority, and (3) the defendants engaged in unconstitutional conduct. Bivens, 403 U.S. at 389. To prove that he received medical treatment in violation of the Eighth Amendment prohibition against cruel and unusual punishment, Moody must show that personnel to whose care he was committed exhibited "deliberate indifference" to his "serious medical needs." See Estelle, 429 U.S. at 104-05 (asserted by a convicted felon); Hill v. Nicodemus, 979 F.2d 987, 991-92 (4th Cir. 1992) (asserted by a pretrial detainee).

A serious medical need involves a condition that places the inmate at substantial risk of serious harm, usually loss of life or permanent disability, or a condition for which lack of

treatment perpetuates severe pain. See Helling v. McKinney, 509 U.S. 25, 35 (1993); Hudson v. McMillian, 503 U.S. 1, 5 (1992); Wilson v. Seiter, 501 U.S. 294, 298 (1991); Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Deliberate indifffference occurs when an official was aware of facts from which he could draw an inference that a substantial risk of harm existed, that he drew or must have drawn that inference, and that he disregarded the risk. Farmer, 511 U.S. at 837. Inadvertent failure to provide treatment, negligent diagnosis, and medical malpractice do not present constitutional deprivations. Estelle, 429 at 105-06.

Moody fails to show any deliberate indifference by the defendants. It is evident on the face of Moody's complaint that the defendants gave Moody consistently prompt medical care to diagnose and treat his symptoms and were not deliberately indifferent to his medical concerns. Moody's complaint indicates that the prison's medical personnel did indeed provide Moody extensive medical diagnosis and treatment, including medications for his stomach, breathing, and prostate conditions; sarcoidosis exams; urine analysis; and an overnight sleep exam. See (Compl. Ex. B; Pl. Mem. at 6-13.) Moody's Bivens claim amounts, at best, to disagreements about his courses of treatments but does not state a cognizable constitutional claim.

To bring an Eighth Amendment claim of deliberate indifference against supervisory prison personnel, an inmate must show that such officials were personally involved with a denial of treatment, deliberately interfered with a prison physician's treatment, or tacitly authorized or were indifferent to the prison physician's misconduct. Miltier v. Beorn, 896 F.2d 848, 854 (4th Cir. 1990). As I have already noted, the prison medical personnel's acts or omissions did not result in any constitutional violations; thus, any allegations of improper authorization or indifference on the part of supervisors-defendants Allred and Roff logically fail to state a claim.

Id. Furthermore, a Bivens claim is actionable against only individuals, not against the United States or its entities. See Randall v. United States, 95 F.3d 339, 345 (4th Cir. 1996) (stating no remedy under Bivens against the federal government exists, just against federal officials individually). Therefore, the Federal Bureau of Prisons cannot be a defendant to a Bivens claim. Accordingly, Moody's Bivens claim is dismissed, pursuant to 28 U.S.C. § 1915A(b)(1).

B. Federal tort claim

The United States is entitled to sovereign immunity and cannot be sued without its consent. FDIC v. Meyer, 510 U.S. 471, 475 (1994). The FTCA operates to waive the sovereign immunity of the United States such that the government may be "liable in tort in the same manner and to the same extent as a private individual under like circumstances" under the laws of the state where the tort occurred. 28 U.S.C. § 2674; see Baum v. United States, 986 F.2d 716, 719 (4th Cir. 1993); Williams v. United States, 50 F.3d 299, 305 (4th Cir. 1995). As a waiver of immunity, the FTCA is to be "strictly construed, and all ambiguities . . . resolved in favor of the sovereign." Robb, 80 F.3d at 887.

The FTCA applies to claims (1) for money damages, (2) arising from damage to property, personal injury, or death, (3) caused by a negligent or wrongful act (4) of a federal government employee (5) acting within the scope of employment, (6) in circumstances where a private person would be liable under state law. 28 U.S.C. §§ 1346, 2671-2680. Moody names the Federal Bureau of Prisons as a defendant to his FTCA claim. However, agencies cannot be named in an FTCA suit. 28 U.S.C. § 2679(a), (b)(1).[6] Accordingly, the Federal Bureau of Prisons will be

---

[6] Although Moody names individual defendants to his FTCA claim, the Attorney General of the United States has the discretion to waive sovereign immunity and substitute the United States as the sole defendant in place of its employees. See 28 U.S.C. § 2679(c), (d).

terminated as a defendant to this claim.

Federal courts apply the substantive law of the state in which the act or omission giving rise to the action occurred for FTCA actions; therefore, Virginia law applies to Moody's FTCA claim. Myrick v. United States, 723 F.2d 1158, 1159 (4th Cir. 1983) (citations omitted). However, Moody fails to discuss the relationship of Virginia law to his tort claims against the defendants, and he will be unable to proceed with his FTCA action until he does. Therefore, I will provide, by a separate conditional filing order, the opportunity for Moody to amend his complaint to address Virginia law for his remaining FTCA claim.[7]

To prove negligence under Virginia law, a plaintiff must (1) identify a legal duty of the defendant to the plaintiff, (2) a breach of that duty, and (3) injury to the plaintiff (4) proximately caused by the breach. Talley v. Danek Med. Inc., 179 F.3d 154, 157 (4th Cir. 1999). In Virginia, a party alleging medical malpractice must also obtain an expert certification of merit before serving the defendant, pursuant to the Virginia Medical Malpractice Act (VMMA). Va. Code § 8.01-20.1; see Parker v. United States, 475 F. Supp. 2d 594, 596 (E.D. Va. 2007) (stating that an

---

[7] The applicable statute of limitations for FTCA claims provides that a tort claim will be barred unless it is presented to the appropriate federal agency within two years after the claim accrues and the suit begins within six months after the agency mails its final notice of denial. 28 U.S.C. § 2401(b). Moody filed suit within six months after the United States Department of Justice mailed him his final rejection letter. Moody also included his Claim for Damage, Injury, or Death (OMB Form #1105-0008) with his complaint. This form's date of claim is December 18, 2007. Therefore, the two-year limitation would extend to December 2005. Tort claims that accrued earlier than December 2005 would be barred by § 2401(b).

A tort claim accrues when a plaintiff possesses sufficient facts so that a reasonable inquiry would reveal a cause of action. United States v. Kubrick, 444 U.S. 111, 120 (1979). Moody's argument, in essence, is that the claim accrued when he was diagnosed with asthma in May 2006 because Moody did not realize he had been misdiagnosed until staff validated his claims of difficulty breathing. However, I will defer the decision of accrual as a matter of caution toward a pro se litigant for all his claims against all the defendants until I have a more developed record. See Harrison v. U.S. Postal Serv., 840 F.2d 1149, 1152 (4th Cir. 1988) (stating that pro se complaint should not be dismissed unless it appears to a certainty that the plaintiff would not be entitled to relief under any legal theory which might plausibly be suggested by the facts alleged).

FTCA medical malpractice claim is subject to the VMMA expert certification of merit requirement). The VMMA provides an exception to the certification requirement when expert certification is unnecessary "if the plaintiff, in good faith, alleges a medical malpractice action that asserts a theory of liability where expert testimony is unnecessary because the alleged act of negligence clearly lies within the range of the [factfinder's] common knowledge and experience." Va. Code § 8.01-20.1; see Beverly Enterprises-Va., Inc. v. Nichols, 247 Va. 264, 267 (1994) (noting that the exception applies only in "rare instances" because only rarely do the alleged acts of medical negligence fall within the range of a factfinder's common knowledge and experience). "Where . . . a plaintiff 'calls into question' a 'quintessential professional medical judgment,' the matter 'can be resolved only by reference to expert opinion testimony.'" Parker, 475 F. Supp 2d at 597 (citing Callahan v. Cho, 437 F. Supp. 2d 557, 563 (E.D. Va. July 6, 2006); see Beverly Enterprises-Va., Inc., 247 Va. at 267.

### III.

Moody filed a request for a temporary injunction against the Federal Bureau of Prisons' (BOP) employees for their "unreasonable retaliation." (Docket #9.) Moody requests the injunction remain effective while he is under BOP control to prevent BOP employees from subjecting Moody to "unreasonable disciplinary reports, or lockdowns in either disciplinary or administrative segregation unit." Moody argues that he is transferred to other prisons without warning, is still denied his medical treatment, and does not have adequate access to his medical records.

The standard governing the issuance of injunctive relief in the Fourth Circuit is a balancing of the hardships test. Blackwelder Furniture Co. v. Seilig Mfg. Co., 550 F.2d 189, 194

(4th Cir. 1977). I must consider: (1) the likelihood of irreparable harm to the plaintiff if the preliminary injunction is denied; (2) the likelihood of harm to the defendant if the requested relief is granted; (3) the likelihood that the plaintiff will succeed on the merits; and (4) the public interest. Direx Israel, Ltd. v. Breakthrough Medical Corp., 952 F.2d 802, 812 (4th Cir. 1991). The plaintiff bears the burden of establishing each of these factors in order to prevail on his motion. Id.

Moody fails to clearly show that he will suffer irreparable injury without the injunction and that the harm is "neither remote nor speculative, but actual and imminent." Id. Furthermore, Moody has not stated a claim of constitutional significance nor shown that he is likely to succeed on the merits. Therefore, I find no basis upon which to grant him a temporary injunction. Accordingly, I deny Moody's motion for injunctive relief.

IV.

For the foregoing reasons, I dismiss Moody's Bivens claim and terminate the Federal Bureau of Prisons as a defendant to plaintiff's remaining FTCA claim. I also deny Moody's request for injunctive relief. Therefore, only Moody's Federal Tort Claims Act claims against defendants Daniel DeJesus, David Allred, David Roff, Irwin Fish, and Judy Pham remain.

The Clerk is directed to send copies of this memorandum opinion and the accompanying order to the plaintiff.

ENTER: This 1st day of December, ~~November,~~ 2008.

Senior United States District Judge